**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SHAWN ALEXANDER POWELL,** | **No. 20-cv-0593 (NLH) (AMD)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **DAVID E. ORTIZ, et al.,** | |
| **Defendants.** | |

APPEARANCE:

Shawn Alexander Powell
70439-056
Fort Dix Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640

     *Plaintiff Pro se*

HILLMAN, District Judge

     Plaintiff Shawn Alexander Powell, a federal prisoner

presently incarcerated in FCI Fort Dix, New Jersey, seeks to

bring a complaint pursuant to Bivens v. Six Unknown Named Agents

of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and the Federal

Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq.

See ECF No. 1.  He has also moved for the appointment of pro

bono counsel.  ECF No. 3.

     At this time, the Court must review the Complaint, pursuant

to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be

dismissed as frivolous or malicious, for failure to state a

1

claim upon which relief may be granted, or because it seeks

monetary relief from a defendant who is immune from such relief.

For the reasons set forth below, the Court will permit the

complaint to proceed in part.  The Court will deny Plaintiff's

motion for the appointment of counsel.

I.   BACKGROUND

Plaintiff alleges that he reported to Fort Dix's Health

Services on December 15, 2016 "with what seemed to be a swollen

spider bite that burned very badly on my left inner tricep

area."  ECF No. 1 ¶ 1.  He alleges that Nurse Maruska sent him

back with ibuprofen because Dr. Elias would not be in until

Monday and there was a shortage of staff.  Id.

Plaintiff returned to Health Services on December 18, 2016.

Id. ¶ 2.  Nurse Fletcher examined Plaintiff and told him that

the Dr. Elias would be back the next day.  Id. ¶ 3.  Plaintiff

told Nurse Fletcher that he "could feel [his] heart beat

hurting" and he felt like he was having a heart attack.  Id.  He

asked to go to the hospital, but Nurse Fletcher said Plaintiff

could only go if he were to "'fall out or something.'"  Id.

Plaintiff received more ibuprofen.  Id.  Plaintiff states the

bite was the size of a golf ball.  Id.

Plaintiff reported back to Health Services at 6:00 a.m. the

next morning because of the pain in his arm.  Id. ¶ 4.  Nurse

Maruska took him back to see Dr. Elias, who stated that he had

2

to "'open this right now.  How long has this been this way?'"
Id.  "'From the looks of this and how you say you are feeling
one more day and maybe you would've had blood poisoning.  This
type of thing is serious and can literally kill you if it's not
treated in time.'"  Id.  Dr. Elias injected the site with
anesthetic, cut open the wound, "squeezed the pus and blood out
of the abscess before taking some scissors and cutting the
necrotic tissue out of the infected area."  Id. ¶ 5.  Plaintiff
received injections to prevent pain and infection.  Id.
Plaintiff also received a prescription for Bactrim and was told
to report to Health Services for daily dressings.  Id.
Plaintiff later learned that the lab report came back positive
for Methicillin-Resistant Staphylococcus Aureus (MRSA).  Id. ¶
6.

On January 26, 2017, Plaintiff reported back to Health
Services complaining of another abscess under his right arm.
Id. ¶ 7.  The unidentified staff member told Plaintiff it did
not "'look that bad,'" and told him to get over-the-counter pain
medicine from the commissary.  Id.  Plaintiff returned two days
later because the abscess had gotten worse.  Id. ¶ 8.  Nurse
Maruska told Plaintiff that Dr. Elias was out and would not be
back until the next week.  Id.  Plaintiff received some
ibuprofen.  Id.

Plaintiff returned four days later and saw Dr. Elias right away.  Id. ¶ 9.  Dr. Elias told Plaintiff he would "open" the abscess that week.  Id.  Plaintiff returned two days later, and Dr. Elias repeated the process from before.  Id. ¶ 10. Plaintiff was injected in the shoulder with "Rocephin for infection and prescribed Doxycycline tablets and Bactrim tablets to be taken twice a day for ten days for infection."  Id.  The abscess tested positive for MRSA.  Id.

Plaintiff returned to Health Services with another abscess under his right arm on March 9, 2017.  Id. ¶ 11.  Dr. Elias opened the abscess the next day.  Id. ¶ 12.  Once again, Plaintiff tested positive for MRSA.  Id.

On April 13, 2017, Plaintiff reported to Health Services with an abscess in between his buttocks.  Id. ¶ 13.  Dr. Elias and Nurse Maruska treated the abscess that same day.  Id. Unlike the prior instances, Dr. Elias placed gauze over the site but did not "stuff the wound with gauze."  Id.  As Dr. Elias was finishing up, the pharmacist walked in and stated that he recommended Clindamycin to Dr. Elias and Physician's Assistant Ibe.  Id. ¶ 14.  Dr. Elias determined there was no Clindamycin in stock and prescribed Bactrim and Doxycycline until the Clindamycin arrived.  Id.  Plaintiff received the Clindamycin on April 17, 2017.  Id. ¶ 15.

4

Plaintiff went to Health Services on May 8, 2017 complaining of a rash.  Id. ¶ 16.  Dr. Elias stated it might be a reaction to the Clindamycin, but that Plaintiff should keep taking it to stop the MRSA outbreaks.  Id.  Plaintiff was given triamcinolone ointment to help with the itching.  Id.  Plaintiff was told the most recent abscess had tested positive for E. Coli.  Id.

The fourth abscess continued draining and causing Plaintiff pain, so he went back to Health Services on September 24, 2017. Id. ¶ 18.  He was given ibuprofen for the pain and Bactrim tablets and Doxycycline to prevent infection.  Id.  Plaintiff went back on December 15, 2017, complaining that the itching had not subsided.  Id. ¶ 19.  Dr. Elias gave Plaintiff triamcinolone ointment, selenium sulfide lotion, and miconazole cream and told Plaintiff to make sure he was cleaning the area.  Id.  On January 9, 2018, Dr. Elias told Plaintiff he would be referring Plaintiff to a specialist because the abscess was not healing and could be a fistula.  Id. ¶ 20.  He gave Plaintiff ibuprofen for the pain.  Id.

Plaintiff was taken to St. Francis Medical Center on February 27, 2018 for surgery.  Id. ¶ 21.  Plaintiff states the surgeon "'looked into [his] intestines and there wasn't a hole. So he opened the abscess and cut all the icky stuff out and plugged it and sewed it close.'"  Id.  He was told to change the

bandages within a day or two.  Id.  He was given an injection

for the pain and prescribed Percocet for later.  Id.  As

Plaintiff was being escorted back to his cell, Nurse Fletcher

allegedly told him: "'[t]he surgeon prescribed you percocets

which you know you're not getting.  So I'm going to place you on

Tylenol 3's twice a day for three days.  If you need anything

[just] fill out a sick call form and someone will come see

you.'"  Id. ¶ 22.

Plaintiff did not eat dinner or breakfast the next day

because the bandages needed to stay in place for twenty-four

hours.  Id. ¶¶ 22-23.  He decided to shower first before

attempting to use the restroom.  Id. ¶ 23.  While in the shower,

Plaintiff attempted to clean the surgical site but stopped when

he felt a sharp pain in his rectum.  Id. ¶ 24.  He requested

assistance from the SHU officer, who told him medical would be

coming to help him use the restroom.  Id.  Plaintiff states he

had to use tissues to cover the wound because he had removed the

dirty bandages in the shower and medical had not provided him

with clean ones.  Id.

That evening, Plaintiff asked the medical personnel

delivering his medication if he could assist Plaintiff in making

a bowel movement.  Id. ¶ 25.  He told Plaintiff to fill out a

sick call slip and left without taking a slip from Plaintiff.

Id.  Plaintiff states he ate dinner and asked the SHU officer to

send for medical to help Plaintiff with his bowel movement.  Id.
¶ 26.  The officer replied that medical was coming, but no one
ever arrived to help Plaintiff.  Id.  Plaintiff complained the
next morning, and another officer said he would notify medical.
Id.  No one came.  Id.

On March 1, 2018, Plaintiff told Officer Suero about his
medical problems.  Id. ¶ 28.  Officer Suero said he would be
back after he finished delivering trays.  Id..  He later brought
another inmate to Plaintiff's cell and told Plaintiff to "'cuff
up'" so he could put the inmate in the cell.  Id. ¶ 28.
Plaintiff objected to having a third inmate placed in his cell,
but ultimately obeyed.  Plaintiff could not wait any longer to
have his bowel movement.  Id.  Plaintiff describes the
experience as very painful.  Id.  ¶ 29.  He again asked Officer
Suero for help, but no medical assistance arrived.  Id. ¶ 30.
Plaintiff states he spoke to several SHU officers and medical
personnel between March 1 and 14, 2018, but no one helped him.
Id.

Plaintiff states he spoke with the Regional Director on
March 14, 2018.  Id.  The Regional Director told Plaintiff that
he would make sure Plaintiff saw medical that day.  Id.  Once
Plaintiff got to medical, Physician's Assistant Ibe stated there
were no stitches and that the delay in care was likely because

7

"'the communication around here is bad.'"  Id. ¶ 31.  He

prescribed medication for pain and to prevent infection.  Id.

    Plaintiff began the administrative remedy process on March

17, 2018 and filed a Federal Tort Claims Act notice on January

8, 2020.  ECF No. 1 at 27, 30.  He filed this complaint on

January 16, 2020.  He seeks $137,000 in damages.  Id. at 6.

II.   STANDARD OF REVIEW

    Section 1915(e)(2) requires a court to review complaints

prior to service in cases in which a plaintiff is proceeding in

forma pauperis. The Court must sua sponte dismiss any claim that

is frivolous, is malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief.  This action is subject to sua

sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B)

because Plaintiff is proceeding in forma pauperis.

    To survive sua sponte screening for failure to state a

claim, the complaint must allege "sufficient factual matter" to

show that the claim is facially plausible.  Fowler v. UPMC

Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has

facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'"  Fair Wind

Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir. 2014)

(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "[A]

pleading that offers 'labels or conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'"

Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 555 (2007)).

III. DISCUSSION

    A.   Bivens Claims

    Plaintiff alleges deliberate indifference to his medical

needs under Bivens v. Six Unknown Named Agents of Fed. Bureau of

Narcotics, 403 U.S. 388 (1971) and Carlson v. Green, 446 U.S. 14

(1980) (extending the Bivens remedy to denial of medical care

claims).

    To state an Eighth Amendment Claim, a plaintiff must allege

facts indicating that defendants were deliberately indifferent

to his or her serious medical need.  Estelle v. Gamble, 429 U.S.

97, 104 (1976).  "[A] plaintiff must make (1) a subjective

showing that 'the defendants were deliberately indifferent to

[his or her] medical needs' and (2) an objective showing that

'those needs were serious.'"  Pearson v. Prison Health Serv.,

850 F.3d 526, 534 (3d Cir. 2017) (quoting Rouse v. Plantier, 182

F.3d 192, 197 (3d Cir. 1999) (second alteration in original)).

The Court presumes for screening purposes only that Plaintiff

has demonstrated a serious medical need.  See Atkinson v.

Taylor, 316 F.3d 257, 266 (3d Cir. 2003) ("[T]his Court has

defined a medical need as serious if it has been diagnosed by a physician as requiring treatment . . . .").

The Third Circuit has found deliberate indifference "'where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment.'"  Parkell v. Danberg, 833 F.3d 313, 337 (3d Cir. 2016) (quoting Rouse, 182 F.3d at 197).  "[M]ere allegations of malpractice do not raise issues of constitutional import.  Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (internal citations omitted).

Construing the complaint liberally and giving Plaintiff the benefit of all reasonable inferences, the Court concludes that he has sufficiently alleged Eighth Amendment claims against D. Ortiz, C. Smith, M. Grissom, J. Wilk, Nicoletta Turner-Foster, E. Fletcher, G. Martin, J. Watt, Ms. Tucker, J. Suero, Counselor T. Jones, and John and Jane Does 1-5.[1]

Plaintiff has not stated an Eighth Amendment claim against Nurse Maruska.  Plaintiff's alleges that she examined him

---

[1] To the extent these individuals are not listed in the caption the Court will order the Clerk to add them.

several times both individually and with Dr. Elias.  When Nurse

Maruska examined him by herself, she would tell Plaintiff that

there was nothing she could do other than give him pain

medication because the doctor was not available to see him.

See, e.g., ECF No. 1 ¶¶ 1, 8.  There is no indication that she

was deliberately indifferent to Plaintiff's medical needs; at

best, Plaintiff has only alleged medical malpractice claims

against her, which would need to be brought against the United

States under the FTCA.[2]  The Eighth Amendment claims against her

are dismissed without prejudice.

Plaintiff also has not alleged a claim against Nurse West.

Plaintiff alleges he told Nurse West on or about March 20, 2018

that he had not seen medical since March 14.  Id. ¶ 38.  He

states Nurse West said he would talk with PA Ibe, but no one

came to see Plaintiff afterwards.  Id.  This is insufficient to

state a deliberate indifference claim against Nurse West.

Plaintiff has not stated a claim against A. Elnari because

the only allegation against him is that Plaintiff spoke to him

on February 28 and March 1, 2018 about his "medical issue."  Id.

¶ 30.  Plaintiff was told that he would have to fill out a sick

call slip.  Id.  Without more information, for example what

---

[2] The only proper defendant in a FTCA claim is the United States.
CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008), as
amended (Sept. 29, 2008).

Plaintiff told Mr. Elnari about his "medical issue," the Court
cannot reasonably infer that Mr. Elnari was deliberately
indifferent to Plaintiff's medical needs.

Plaintiff also has not stated a claim against Ms. Wright.
The only mention of her name is in the list of defendants, id.
at 26.  Without further information, the Court cannot reasonably
infer that she was deliberately indifferent to Plaintiff's
medical needs.

Plaintiff may move to amend his complaint against these
individuals if he can allege enough facts indicating deliberate
indifference.  Fed. R. Civ. P. 15.

B.    Federal Tort Claims Act

Plaintiff also seeks to bring negligence claims under the
FTCA.  "The FTCA waives sovereign immunity and grants district
courts jurisdiction over tort claims against the United States
'under circumstances where the United States, if a private
person, would be liable to the claimant in accordance with the
law of the place where the act or omission occurred.'"  Gould
Elecs. Inc. v. United States, 220 F.3d 169, 179 (3d Cir. 2000)
(quoting 28 U.S.C. § 1346(b)(1)) (emphasis omitted), modified on
other grounds by Simon v. United States, 341 F.3d 193 (3d Cir.
2003).  This waiver of sovereign immunity is limited, however.

Plaintiff asks to stay this action until he has completed
the process for exhausting his administrative remedies.  ECF No.

12

1-2.   The FTCA "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." McNeil v. United States, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)).   In order to exhaust his administrative remedies, a plaintiff suing under the FTCA must present the offending agency, in this case the Bureau of Prisons, with a notice of the claim that includes a "sum certain" demand for monetary damages.   White-Squire v. U.S. Postal Serv., 592 F.3d 453, 457 (3d Cir. 2010).   Exhaustion is complete when either the agency denies the claim or six months have passed without a written denial of the claim.   28 U.S.C. § 2675(a).   "This requirement is jurisdictional and cannot be waived."   Shelton v. Bledsoe, 775 F.3d 554, 569 (3d Cir. 2015).

Plaintiff admits that exhaustion was not complete when he filed his complaint.   According to the complaint, Plaintiff mailed his notice of claim on January 8, 2020.   ECF No. 1 at 30. He could not deem any non-response by the Bureau of Prisons to be a denial of his claim until July 8, 2020 at the very least. "To the extent that § 2675(a) permits a party to 'deem' an administrative claim denied, the statute makes clear that this constitutes a 'final denial' only for purposes of determining whether the administrative-exhaustion requirement is satisfied, i.e., whether it is still too early to file a claim."   See

Barnes v. United States, 776 F.3d 1134, 1142 (10th Cir. 2015)

(emphasis omitted).

     Assuming that Plaintiff did not receive a response and that

he would now be entitled to deem his claim denied,[3] the Supreme

Court has held that exhaustion subsequent to filing of a

complaint does not cure the initial jurisdictional defect even

if no substantial progress has been made in the litigation.

"Every premature filing of an action under the FTCA imposes some

burden on the judicial system and on the Department of Justice

which must assume the defense of such actions."  McNeil v.

United States, 508 U.S. 106, 112, (1993).[4]  Therefore, the Court

lacks jurisdiction over the FTCA claim because Plaintiff filed

it too early.  28 U.S.C. § 2675(a).  Staying the claim would be

pointless because the expiration of the six-month period for

_____

[3] If the claim was formally denied, the six-month period to file
in district court period applies.  Barnes v. United States, 776
F.3d 1134, 1142 (10th Cir. 2015) ("[R]egardless of whether
plaintiffs have already 'deemed' their administrative claims
denied and commenced a suit against the government under the
FTCA, a formal denial of those claims triggers the six-month
limitations period described in § 2401(b).").  In other words, §
2675(a) states when it is too early to file a complaint, and §
2401(b) states when it is too late to file a complaint.

[4] "While we have insisted that the pleadings prepared by
prisoners who do not have access to counsel be liberally
construed, and have held that some procedural rules must give
way because of the unique circumstance of incarceration, we have
never suggested that procedural rules in ordinary civil
litigation should be interpreted so as to excuse mistakes by
those who proceed without counsel."  McNeil, 508 U.S. at 113
(internal citations and footnotes omitted).

agency action does not change the fact that Plaintiff filed too early.

The Court is constrained to dismiss the FTCA claim without prejudice.  Plaintiff must file a new FTCA complaint.

C.    Appointment of counsel

Plaintiff also moves for the appointment of counsel.  ECF No. 3.  Appointment of counsel is a privilege, not a statutory or constitutional right, Brightwell v. Lehman, 637 F.3d 187, 192 (3d Cir. 2011), and is governed by the factors enumerated in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993).  "As a threshold matter, the indigent plaintiff's case must have some arguable merit in fact and law."  Cuevas v. United States, 422 F. App'x 142, 144 (3d Cir. 2011).  The Court will proceed to analyze the Tabron factors as the Court has permitted the complaint to proceed in part.

In determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain

and afford counsel on his own behalf.  See Tabron, 6 F.3d at
155-56, 157 n.5.

After considering and weighing the Tabron factors, the
Court will deny Plaintiff's motion at this time.  Plaintiff has
presented his case in a coherent manner thus far and has
survived the Court's sua sponte review.  Plaintiff's Eighth
Amendment claim does not appear to be especially complex based
on the face of the complaint, and the Court does not anticipate
any special difficulty for Plaintiff in presenting his case.  It
appears to the Court that most of the discovery will consist of
Plaintiff's medical records, which Plaintiff should not have too
much difficulty obtaining.  The fact that Plaintiff's and the
officers' credibility will be a significant factor at trial
weighs in favor of appointing counsel.  As Plaintiff is
proceeding in forma pauperis, the Court accepts that he cannot
afford counsel on his own, which also weighs slightly in favor
of appointing counsel.

In medical cases, the Third Circuit distinguishes between
those cases in which medical care was inadequate and those in
which medical care was entirely denied.  Pearson v. Prison
Health Serv., 850 F.3d 526, 535 (3d Cir. 2017).  "[E]xpert
testimony 'is not necessarily required' where other forms of
extrinsic proof may suffice."  Id. at 536 (quoting Brightwell v.
Lehman, 637 F.3d 187, 194 n.8 (3d Cir. 2011)).  It does not

16

appear at this time that expert testimony would be necessary as

the Eighth Amendment claim, the only claim that is proceeding,

alleges prison officials did not treat Plaintiff's medical

needs.  Plaintiff's medical records would reflect what treatment

he received without need of an expert.  This factor weighs

against appointing counsel.

Balancing the factors, the Court concludes the appointment

of counsel is not warranted at this time.  The Court may revisit

this issue at a later time if circumstances warrant, and

Plaintiff may reapply for counsel if he believes his

circumstances have changed.

IV.   CONCLUSION

For the reasons stated above, the Eighth Amendment claim

will proceed in part.  The Federal Tort Claims Act claim will be

dismissed without prejudice.  Plaintiff's motion for counsel

will be denied.

An appropriate order follows.


Dated: August 28, 202            __s/ Noel L. Hillman ____
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.


17